UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IDAN BAR-ASHER, *individually and on behalf of all others similarly situated*,

Plaintiff,

v.

PLAYTIKA HOLDING CORP., ROBERT ANTOKOL, CRAIG J. ABRAHAMS, TROY J. VANKE, WEI LIU, MARC BEILINSON, BING YUAN, and TIAN LIN,

Defendants.

ORDER
21-CV-6571-RPK-SJB

**BULSARA, United States Magistrate Judge:**

Plaintiff Idan Bar-Asher ("Bar-Asher") filed this putative class action pursuant to the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act") against Playtika Holding Corp. ("Playtika") and certain of its officers and directors on November 23, 2021.[1] (Class Action Compl. dated Nov. 23, 2021 ("Compl."), Dkt. No. 1). The Complaint alleges that Defendants made false and misleading public statements in connection with and following Playtika's January 15, 2021 initial public offering (the "IPO"). (*Id*. ¶¶ 1–13, 73–102). The putative class is comprised of investors who purchased or otherwise acquired Playtika's securities

---

[1] The individual defendants are officers or directors of Playtika. Compl. ¶¶ 20–32. Robert Antokol ("Antokol") has served as Playtika's CEO and Chairman and Craig J. Abrahams ("Abrahams" and together with Antokol, the "Exchange Act Individual Defendants") has served as its President and CFO. *Id*. ¶¶ 20–22. Troy J. Vanke ("Vanke") was Playtika's Chief Accounting Officer at the time of the IPO. *Id*. ¶ 25. Wei Liu ("Liu"), Marc Beilinson ("Beilinson"), Bing Yuan ("Yuan"), and Tian Lin ("Lin" and together with Vanke, Liu, Beilinson, and Yuan, the "Securities Act Individual Defendants") each served as a Director of Playtika at the time of the IPO. *Id*. ¶ 26–30.

pursuant and/or traceable to its IPO, or did so between January 15, 2021 and November 2, 2021. (*Id.* ¶ 1).

Pending before the Court is the unopposed motion of LBMotion Ltd. ("LBMotion") for appointment as Lead Plaintiff and for approval of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Class Counsel. (LBMotion Notice of Mot. dated Jan. 24, 2022 ("LBMotion Notice"), Dkt. No. 13). Four other motions for appointment as Lead Plaintiff and appointment of Lead Class Counsel were filed by Gary Kramer ("Kramer"), Igor Elkin ("Elkin"), Tobin Zhou ("Zhou"), and Netanel Nahum and Harvey Kraft ("Nahum and Kraft"); all but Nahum and Kraft supplemented their motions with notices of non-opposition to LBMotion's application.[2] Nahum and Kraft abandoned their motion.[3]

For the reasons stated below, LBMotion's application is granted.

## BACKGROUND

Playtika develops mobile games for an international audience and distributes them "through various web and mobile platforms, such as Apple, Facebook, Google," and its own platforms. (Compl. ¶ 2). It trades on the Nasdaq under the ticker symbol

---

[2] *See* Mot. for Appointment by Kramer dated Jan. 24, 2022, Dkt. No. 10 (withdrawn by Notice dated Feb. 7, 2022, Dkt. No. 26); Mot. to Appoint by Elkin dated Jan. 24, 2022, Dkt. No. 14 (withdrawn by Notice dated Feb. 7, 2022, Dkt. No. 24); Mot. to Appoint by Zhou dated Jan. 24, 2022, Dkt. No. 17 (withdrawn by Notice dated Feb. 7, 2022, Dkt. No. 25); Mot. to Appoint by Nahum and Kraft dated Jan. 24, 2022, Dkt. No. 19.

[3] Nahum and Kraft "did not file an opposition or reply brief and presumably [have] abandoned the motion." *Teran v. Subaye, Inc.*, Nos. 11 Civ. 2614, 11 Civ. 3886, 2011 WL 4357362, at *2 n.2 (S.D.N.Y. Sept. 16, 2011); *Kasilingam v. Tilray, Inc.*, No. 20-CV-03459, 2020 WL 4530357, at *1 n.1 (S.D.N.Y. Aug. 6, 2020) ("One movant failed to respond and that investor group is therefore considered to have abandoned its motion [to appoint lead plaintiff and class counsel].").

"PLTK." (*Id.* ¶¶ 4, 19).  On December 18, 2020, Playtika filed a registration statement on Form S-1 (the "Registration Statement") with the SEC.  (*Id.* ¶¶ 3, 34).  On January 15, 2021, Playtika conducted the IPO and filed a prospectus on Form 424B4 that incorporated the Registration Statement (together, the "Offering Documents").  (*Id.* ¶¶ 3–4, 35).  In the IPO, Playtika issued 18,518,500 ordinary shares at a price of $27.00 per share, raising approximately $480 million.  (*Id.* ¶¶ 5, 36).

The Complaint alleges the Offering Documents failed to disclose three adverse facts: namely that Playtika's (1) overall costs, sales and marketing costs, and research and development costs were going to rise significantly; (2) success with its game portfolio was less sustainable than indicated; and (3) revenue and earnings were likely to suffer because of these facts.  (*Id.* ¶¶ 6, 37–41).

The Complaint further alleges that the Company made materially false and misleading statements after the IPO, (Compl. ¶¶ 1, 42), in the press release and earnings call for Playtika's Q4 2020 results, its 2020 Form 10-K annual report, its Q1 2021 earnings call, and its press release and earnings call for Q2 2021.  (*Id.* ¶¶ 42–55).  The allegedly false statements generally concern the same topics that are at issue in the Offering Documents.  (*Compare id.* ¶ 55, *with id.* ¶ 41).

On May 11, 2021, Playtika announced Q1 2021 financial results that fell short of earnings per share estimates, and its share price fell 3.47%.  (*Id.* ¶¶ 56–57).  On November 3, 2021, it announced Q3 2021 results that missed estimates for both revenue and earnings per share, and its share price fell 23.3%.  (*Id.* ¶¶ 58–61).

This action was commenced on November 23, 2021. (Compl.).  The Complaint contains four counts, for violations of: (1) section 11 of the Securities Act, 15 U.S.C. § 77k, against all Defendants (Count I); (2) section 15 of the Securities Act, 15 U.S.C. § 77o,

3

against the Securities Act Individual Defendants (Count II); (3) section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, against Playtika and the Exchange Act Individual Defendants (Count III); and (4) section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against the Exchange Act Individual Defendants (Count IV). (*Id.* ¶¶ 73–102).

## DISCUSSION

The Private Securities Litigation Reform Act ("PSLRA") requires that a plaintiff who files a complaint publish, in a widely circulated business oriented publication or wire service, a notice advising members of the purported class of "the pendency of the action, the claims asserted therein, and the purported class period"; and provides that "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff[.]" 15 U.S.C. §§ 77z-1(a)(3)(A)(i), 78u-4(a)(3)(A)(i).

On November 23, 2021—the same day the Complaint was filed—Pomerantz LLP, counsel for Bar-Asher and Elkin, filed a notice in *Globe Newswire* about the lawsuit. (*See* Notice dated Nov. 23, 2021, attached as Ex. C to Decl. of Francis P. McConville in Supp. of LBMotion Ltd.'s Mot. dated Jan. 24, 2022 ("McConville Decl."), Dkt. No. 13-2 at 1–2). "*Globe Newswire* is a suitable vehicle for meeting the statutory requirement that notice be published." *Chen v. X Fin.*, No. 19-CV-6908, 2020 WL 2478643, at *2 (E.D.N.Y. May 13, 2020) (quotations omitted).[4]

---

[4] "[C]ourts use the same construction standards for PSLRA decisions" to decide motions for lead plaintiff and class counsel under the Securities Act and the Exchange Act because the "the relevant language of both versions of the PSLRA is identical." *Ford v. Voxx Int'l Corp.*, No. 14-CV-4183, 2015 WL 4393798, at *2 n.1 (E.D.N.Y. July 16, 2015); 15 U.S.C. § 77z-1; 15 U.S.C. § 78u-4.

4

LBMotion's motion was filed on January 24, 2022, (*see* LBMotion Notice), and was therefore timely. *See* 15 U.S.C. §§ 77z-1(a)(3)(A)(i)(II), 78u-4(a)(3)(A)(i)(II); *e.g.*, *Oklahoma Firefighters Pension & Ret. Sys. v. Xerox Corp.*, No. 16 Civ. 8260, 2017 WL 775850, at *4 (S.D.N.Y. Feb. 28, 2017) (finding motion for lead plaintiff timely); *Rauch v. Vale S.A.*, 378 F. Supp. 3d 198, 207 (E.D.N.Y. 2019) (same); *In re Sequans Commc'ns S.A. Sec. Litig.*, 289 F. Supp. 3d 416, 420 (E.D.N.Y. 2018) (same). As explained above, the motion is unopposed.

I.      Lead Plaintiff

The PSLRA requires the Court to appoint as "Lead Plaintiff" the member of the putative class that the Court determines to be the "most adequate plaintiff," *i.e.*, the member the Court determines to be "most capable of adequately representing the interests of class members." 15 U.S.C. §§ 77z-1(a)(3)(B)(i), 78u-4(a)(3)(B)(i). The Court must "adopt a presumption that the most adequate plaintiff . . . is the person or group of persons" that:

> (1) "has either filed the complaint or made a [timely] motion" to be appointed as lead plaintiff(s);
>
> (2) "in the determination of the court, has the largest financial interest in the relief sought by the class"; and
>
> (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."

15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted "only" by proof that the presumptively adequate plaintiff either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II), 78u-4(a)(3)(B)(iii)(II).

Even when a motion to appoint a Lead Plaintiff is unopposed, the Court must still consider the factors under the PSLRA to ensure that the movant is the most adequate plaintiff. *See Springer v. Code Rebel Corp.*, No. 16-CV-3492, 2017 WL 838197, at *1. (S.D.N.Y. Mar. 2, 2017) ("Though [the] motion is now unopposed, the Court nevertheless addresses the requirements under the [PSLRA] for appointment of lead plaintiffs[.]"); *e.g.*, *City of Warren Police & Fire Ret. Sys. v. Foot Locker, Inc.*, 325 F. Supp. 3d 310, 314 (E.D.N.Y. 2018); *In re Symbol Techs., Inc. Sec. Litig.*, No. 05-CV-3923, 2006 WL 1120619, at *2 (E.D.N.Y. Apr. 26, 2006).

As noted, LBMotion made a timely motion to be appointed Lead Plaintiff. The Court therefore turns to the two remaining presumption elements. *See City of Warren*, 325 F. Supp. 3d at 315.

In assessing the financial interests of parties seeking Lead Plaintiff status, the Court will generally consider:

(1) the total number of shares purchased during the class period;

(2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period);

(3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and

(4) the approximate losses suffered.

*In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 112 (E.D.N.Y. 2012) (referring to these factors as the "*Olsten*" factors, and citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)). The fourth factor, the approximate losses suffered, is considered to be the most important. *See Atanasio v. Tenaris S.A.*, 331 F.R.D. 21, 26 (E.D.N.Y. 2019);

6

*Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008); *see also Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 530 (S.D.N.Y. 2015).

Under these criteria, LBMotion has the largest demonstrated financial interest. LBMotion purportedly suffered $63,761.79 in losses, having purchased 4,500 total shares, 4,500 net shares, and expending $148,500.00 on Playtika stock during the class period. (*See* Loss Analysis, attached as Ex. B to McConville Decl.).

The next step in identifying which plaintiff is entitled to the presumption is to determine whether a movant "otherwise satisfies the requirements of Rule 23[.]" *Salinger v. Sarepta Therapeutics, Inc.*, No. 19-CV-8122, 2019 WL 6873807, at *3 (S.D.N.Y. Dec. 17, 2019) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)). In a PSLRA motion to appoint lead plaintiff, the Court considers only whether the proposed plaintiff has made a "preliminary showing" that two Rule 23 requirements—typicality and adequacy—are satisfied. *See Ford*, 2015 WL 4393798, at *3 (adopting report and recommendation) (collecting cases); *see also Atanasio*, 331 F.R.D. at 29–30; *Martingano v. Am. Int'l Grp., Inc.*, No. 06-CV-1625, 2006 WL 1912724, at *4 (E.D.N.Y. July 11, 2006) ("[A]t this stage in the litigation, one need only make a preliminary showing that the Rule's typicality and adequacy requirements have been satisfied.") (quotations and citations omitted).

"Typicality is satisfied where the claims arise from the same course of events and each class member makes similar legal arguments to prove defendant's liability." *In re Symbol Techs.*, 2006 WL 1120619, at *3 (citing *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)). The claims here are all based on the alleged misrepresentations and omissions in the Offering Documents and subsequent press releases and statements on earnings calls made during the class period. And all class

7

members are alleged to have relied on these statements and omissions. (Compl. ¶ 70–72). LBMotion's claims are therefore typical of those of all of the other class members. *E.g.*, *X Fin.*, 2020 WL 2478643, at *4 ("The claims here are all based on the alleged falsity of the IPO Registration Statement, evidenced by the statements in various press releases and conference calls."); *Dixon v. Bemis Co., Inc.*, No. 19 Civ. 3356, 2020 WL 7212082, at *3 (S.D.N.Y. Mar. 10, 2020) ("Dixon contends that 'Defendants are alleged to have solicited all Bemis' shareholders' votes with the same materially incomplete and misleading Proxy Statement that caused Movant's injuries.' This Court is satisfied that . . . Dixon has made the preliminary showing required for typicality[.]") (internal citations omitted); *City of Warren*, 325 F. Supp. 3d at 316 (Exchange Act claims arising out of alleged false statements in press releases and conference calls).

"The adequacy requirement is satisfied where '(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous advocacy.'" *In re Symbol Techs.*, 2006 WL 1120619, at *3 (quoting *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005)); *Atanasio*, 331 F.R.D. at 29; *City of Warren*, 325 F. Supp. 3d at 316.

LBMotion is represented by Labaton Sucharow, a firm that has litigated class actions in the past; the Court concludes the firm would generally be able to conduct this litigation. *See* Labaton Sucharow Resume, attached as Ex. E to McConville Decl. at 3–11.

Nothing about LBMotion's interests appear to be antagonistic to the interests of the other putative class members; this appears to be a fairly common class action based on alleged violations of the Securities Act and the Exchange Act where class members

8

are relying on the same statements or omissions as the factual basis of their claims. *E.g.*, *X Fin.*, 2020 WL 2478643, at *4; *City of Warren*, 325 F. Supp. 3d at 316–17 (Exchange Act claims arising out of alleged false statements in press releases and conference calls); *In re Sequans Commc'ns*, 289 F.Supp.3d at 423; *see also In re Bank of Am. Corp. Sec.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (finding that in an action based on an allegedly misleading proxy statement, "[t]he Public Pension Funds also satisfy the adequacy requirement, as they have the greatest financial interest in the outcome of the case, their interests appear to be otherwise aligned with those of the putative class, and they have retained competent and experienced counsel"). Finally, as noted earlier, LBMotion has suffered alleged losses of $63,761.79 and thus has a sufficient financial interest in the case's outcome to suggest it will pursue the case with vigor.

The presumption that LBMotion should be appointed Lead Plaintiff "may be rebutted only upon proof" that LBMotion "will not fairly and adequately protect the interests of the class" or are "subject to unique defenses that render [them] incapable of adequately representing the class." 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II); 78u-4(a)(3)(B)(iii)(II); *accord Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 323 (S.D.N.Y. 2004). There is no suggestion that LBMotion is subject to unique defenses or cannot fairly and adequately represent the class, and therefore LBMotion is appointed Lead Plaintiff. *See, e.g.*, *In re Gentiva*, 281 F.R.D. at 121 ("[B]ecause there is no indication that LACERS is subject to unique defenses or will be unable to fairly and adequately protect the interests of the class th[e] presumption is not rebutted. Therefore, the motion by LACERS to be appointed lead plaintiff is granted.") (internal citations omitted).

9

II.      Lead Class Counsel

Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. §§ 77z-1(a)(3)(B)(v), 78u-4(a)(3)(B)(v); *see Vale S.A.*, 378 F. Supp. 3d at 211; *In re Sequans Commc'ns*, 289 F.Supp.3d at 426. "The Court generally defers to the plaintiff's choice of counsel, and will only reject the plaintiff's choice . . . if necessary to protect the interests of the class." *Bray v. Frontier Commc'ns Corp.*, No. 17-CV-1617, 2018 WL 525485, at *11 (D. Conn. Jan. 18, 2018) (quotations omitted); *see Kuriakose v. Fed. Home Loan Mortg. Co.*, No. 08-CV-7281, 2008 WL 4974839, at *9 (S.D.N.Y. Nov. 24, 2008) ("The [PSLRA] . . . evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.") (quotations omitted).

The Court sees no reason to not adhere to LBMotion's choice. Labaton Sucharow LLP is appointed Lead Class Counsel.

## CONCLUSION

For the reasons discussed above, the Court grants the motion and appoints LBMotion Ltd. as Lead Plaintiff and Labaton Sucharow LLP as Lead Class Counsel. The other motions are denied as moot.

SO ORDERED.

*/s/ Sanket J. Bulsara*  3/9/2022
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

10